JAMES A. HEARD, State Bar No. 114940
MARK L. MOSLEY, State Bar No. 136449
MELANIE SENGUPTA, State Bar No. 244615
MACKENZIE & ALBRITTON LLP
155 Sansome Street, Suite 800
San Francisco, CA 94104
Telephone: (415) 288-4000
Facsimile: (415) 288-4010
Emails:      jheard@mallp.com
             mmosleyesq@gmail.com
             m.sengupta@mallp.com

Attorneys for Defendants SACRAMENTO-
VALLEY LIMITED PARTNERSHIP, d/b/a
VERIZON WIRELESS and GUILLIAM NEL

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| MONICA EISENSTECKEN, et al., | Case No. 2:20-cv-02349-TLN-CKD |
| Plaintiffs, | **BRIEF OF DEFENDANTS VERIZON WIRELESS AND GUILLIAM NEL IN SUPPORT OF MOTION TO DISMISS THIRD AMENDED COMPLAINT** |
| vs. | |
| TAHOE REGIONAL PLANNING AGENCY, et al., | Hearing date: September 22, 2022<br>Time: 2:00 p.m.<br>Courtroom: 2<br>The Honorable Troy L. Nunley |
| Defendants. | |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................... iii

INTRODUCTION ..................................................................................................... 1

SUMMARY OF THE COMPLAINT AND RELEVANT FACTS ............................... 2

LEGAL STANDARD ................................................................................................ 4

ARGUMENT ............................................................................................................ 5

I.    All claims regarding the alleged environmental impacts of RF
      emissions are either preempted by the Telecommunications Act or
      barred because they conflict with the FCC's authority to regulate RF
      emissions. ...................................................................................................... 5

      A.    Congress authorized the FCC to regulate RF emissions to balance
            competing interests and achieve national uniformity in wireless
            standards. ............................................................................................. 5

      B.    Plaintiffs cannot challenge the FCC regulations in this Court. ...................... 7

      C.    All claims based on the City's failure to regulate RF emissions
            are expressly preempted by the Telecommunications Act. ........................... 7

      D.    Plaintiffs' state-law claims are preempted because they conflict
            with the FCC's RF emissions regulations. ...................................................... 8

      E.    All other claims based on allegedly harmful RF emissions are
            barred because the FCC regulations control. .............................................. 10

II.   Counts 5 and 9-13 should also be dismissed because they fail to
      state any viable claim. ...................................................................................... 13

      A.    Count 5 must be dismissed for lack of jurisdiction. .................................... 13

      B.    Count 9 fails to state a claim under the ADA or the FHAA, which
            in any event do not apply to Verizon or Mr. Nel. ....................................... 15

      C.    Claims 10 through 13 fail to state any viable claim, even if they
            were not preempted (which they are). .......................................................... 16

            1.    RF emissions within FCC limits will not support tort
                  liability under California law. ............................................................ 17

            2.    Plaintiffs' nuisance claims are barred by California Civil
                  Code Section 3482. ........................................................................... 19

III.    All claims regarding the City's approval of the Ski Run Facility,
TRPA's or the City's approval of the 2018 Small Cell, or any other
existing wireless facilities are untimely. ...................................................................19

IV.    The Court should dismiss with prejudice all claims against Mr. Nel. ....................21

A.    All claims based on defendant Nel's tree removal are moot and in
any event fail to state a plausible claim for relief. .......................................22

B.    No other allegations against Mr. Nel state a plausible claim for
relief. ...........................................................................................................23

V.    The entire complaint should be dismissed for violation of Rule 8. .........................24

CONCLUSION .........................................................................................................................27

# TABLE OF AUTHORITIES

## Cases

*Andrews v. Sirius XM Radio, Inc.,* 932 F.3d 1253 (9th Cir. 2019) .......................................12

*Arizona v. United States,* 567 U.S. 387 (2012) .......................................................................8

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ............................................................................4, 23

*Ass'n of Am. R.R.s v. S. Coast Air Quality Mgmt. Dist.,* 622 F.3d 1094 (9th Cir. 2010) ......................................................................................................................................11

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ............................................................4, 13

*Bennett v. T-Mobile U.S.A., Inc.,* 597 F. Supp. 2d 1050 (C.D. Cal. 2008) ...........................9

*California Tahoe Regional Planning Agency v. Sahara Tahoe Corp.*, 504 F.Supp. 753 (D. Nev. 1980) ...............................................................................................................12

*Caruso v. Hill*, 2020 WL 4018141 (E.D. Cal. July 15, 2020)..............................................25

*Center for Biological Diversity v. Marina Point Development Co.*, 566 F.3d 794 (9th Cir. 2009).................................................................................................................14

*Chandler v. State Farm Mut. Auto. Ins. Co*., 598 F.3d 1115 (9th Cir. 2010) .......................4

*Cohen v. Apple, Inc.*, 2020 WL 6342922 (N.D. Cal. 2020)....................................5, 6, 9, 10

*Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992 (9th Cir. 2010)........................................4

*Farina v. Nokia, Inc.,* 625 F.3d 97 (3d Cir. 2010) ............................................................8, 9

*Fontana v. Apple Inc.,* 321 F. Supp. 3d 850 (M.D. Tenn. 2018) ..........................................9

*Hamilton v. County of Madera*, 2021 WL 1577819 (E.D. Cal. 2021), *R&R adopted*, 2021 WL 2651754 (E.D. Cal. 2021) ...............................................................................25

*Hatch v. Reliance Ins. Co.*, 758 F.2d 409 (9th Cir. 1985) ..................................................26

*Honig v. S.F. Planning Dept.*, 127 Cal.App.4th 520 (2005)...............................................20

*Jaeger v. Cellco Partnership,* 2010 WL 965730 (D. Conn. 2010), *aff'd*, 402 Fed.Appx. 645 (2d Cir. 2010), *cert. denied*, 564 U.S. 1038 (2011) .......................6, 7, 8

*Jasso v. Citizens Telecomm. Co. of Cal., Inc.,* 2007 WL 2221031 (E.D. Cal. 2007), *R&R adopted*, 2007 WL 2688837 (E.D. Cal. 2007) ..........................................................9

*Kaspers v. Verizon Wireless Serv.*, 2021 WL 2193584 (N.D. Ga. 2021) ............................9

*Kent v. DaimlerChrysler Corp.*, 200 F.Supp.2d 1208 (N.D. Cal. 2002) ..............................4

iii

*McHenry v. Renne*, 84 F.3d 1172 (9th Cir. 1996) ................................................................. 26

*Merrick Gables Assoc., Inc. v. Town of Hempstead,* 691 F.Supp.2d 355 (E.D.N.Y. 2010) ................................................................................................................................. 9, 10

*Morales v. Trans World Airlines, Inc.,* 504 U.S. 374 (1992) ............................................... 12

*Nat. Fed. of the Blind v. United Airlines, Inc.*, 813 F.3d 718 (9th Cir. 2016) ...................... 8

*Nevijel v. North Coast Life Ins. Co.*, 651 F.2d 671 (9th Cir. 1981) ..................................... 5

*Olfati v. City of Sacramento*, 2021 WL 5204300 (E.D. Cal. 2021) ..................................... 26

*Orellana v. Mayorkas*, 6 F.4th 1034 (9th Cir. 2021) ..................................................... 20, 21

*Public Watchdogs v. Southern California Edison Company*, 2019 WL 6497886 (S.D. Cal. 2019) ............................................................................................................... 19

*Robbins v. New Cingular Wireless PCS, LLC,* 854 F.3d 315 (6th Cir. 2017) ................ 9, 10

*Salisbury v. City of Santa Monica*, 998 F.3d 852 (9th Cir. 2021) ....................................... 16

*San Diego Gas & Electric Co. v. Superior Court*, 13 Cal. 4th 893 (1996) .................... 17, 18

*Sprewell v. Golden State Warriors*, 266 F.3d 979 (9th Cir. 2001) ........................................ 4

*Stanley v. Amalithone Realty, Inc.,* 94 A.D.3d 140 (2012) ................................................. 10

*Swinomish Indian Tribal Community v. BNSF Rwy. Co.,* 951 F.3d 1142 (9th Cir. 2020) .............................................................................................................................. 11, 12

*Tahoe Regional Planning Agency v. King*, 233 Cal.App.3d 1365 (1991) .......................... 11

*Tan Phu Cuong Inv. LLC v. King Cty.*, 831 Fed.Appx. 235 (9th Cir. 2020) ...................... 14

*T-Mobile Northeast, LLC v. Town of Ramapo*, 701 F. Supp. 2d 446 (S.D.N.Y. 2009) ................................................................................................................................... 6

*White v. Lee*, 227 F.3d 1214 (9th Cir. 2000) ........................................................................ 4

*Wolf v. City of Millbrae*, 2021 WL 3727072 (N.D. Cal. 2021), *appeal filed*, 9th Cir. (Oct. 7, 2021) ................................................................................................... 7, 16, 17, 18

## **Statutes**

28 U.S.C. § 2342 ................................................................................................................... 7

33 U.S.C. § 1251(a) ............................................................................................................. 13

33 U.S.C. § 1281 ................................................................................................................. 13

33 U.S.C. § 1311 ................................................................................13

33 U.S.C. § 1342 ................................................................................13

33 U.S.C. § 1365 ...........................................................................14, 15

33 U.S.C. §§ 1251-1388 (Clean Water Act) ..............................13, 14, 15

42 U.S.C. §§ 3601 *et seq.* (the Fair Housing Amendments Act) ...........2, 7, 15, 25

42 U.S.C. §§ 12101 *et seq.*(Americans with Disabilities Act)......................15, 16

42 U.S.C. § 12131(1) .....................................................................16, 23

42 U.S.C. § 12132 ..............................................................................16

47 U.S.C. § 332(c)(7)(B)(iv)..............................................................6, 7

47 U.S.C. § 402(a) ...............................................................................7

Cal. Civ. Code § 3482 ........................................................................19

Cal. Govt. Code § 65009(c)(1)(E) ..............................................3, 19, 20

Cal. Govt. Code § 65009(c)(1)(F).......................................................19

Cal. Water Code § 13361 ....................................................................14

**Rules**

Fed. R. Civ. Pro. 8 ....................................................................... passim

Fed. R. Civ. Pro. 12(b)(1) ..............................................................4, 14

Fed. R. Civ. Pro. 12(b)(6) ..................................................................4

Fed. R. Civ. Pro. 41(b).................................................................4, 5, 26

**Other Authorities**

*In the Matter of Procedures for Reviewing Requests for Relief from State and Local*
   *Regulations Pursuant to Section 332(c)(7)(B)(v) of the Communications Act of*
   *1934*, 12 FCC Rcd. 13494 (FCC rel. August 25, 1997)...................................6

Tahoe Regional Planning Compact, Art. VI(j)(4)....................................2, 19, 20

Tahoe Regional Planning Compact, Article VI(j)(5)....................................22, 23

## INTRODUCTION

Backed by three anti-wireless organizations, plaintiffs' lawsuit is an effort to force the Tahoe Regional Planning Agency ("TRPA") and the City of South Lake Tahoe ("City") to halt the deployment of wireless communications infrastructure and re-write the regulation of all wireless facilities in their jurisdiction to plaintiffs' satisfaction. Plaintiffs attempt to squeeze this sweeping *legislative* agenda into their (largely belated) attacks on the permits issued by TRPA and the City for two specific facilities, a cell tower on defendant Nel's property (the "Ski Run Facility") and a small cell facility that has been legally operating since 2018 (the "2018 Small Cell"), and an unrelated permit for Mr. Nel to remove trees from his property. Through 13 sweeping counts, ranging from violation of the public trust to trespass and assault, and by invoking a veritable alphabet soup of state and federal statutes, plaintiffs' transparent aim is to "halt" the "blanket implementation of cell tower and antenna approvals and installations" until TRPA and the City adopt a regulatory approach that comports with plaintiffs' views of the alleged hazards of the radio frequency ("RF") emissions that all facilities use for wireless communications. Third Amended Complaint, Petition for Writ of Mandate, Declaratory Relief, and Damages (ECF no. 60) (the "TAC"), ¶¶ 6, 8.

Despite its excessive length, plaintiffs' Third Amended Complaint fails to state a single viable claim for relief and should be dismissed in its entirety for several independent reasons. First, all but one of the 13 claims are based on the overarching claim that RF emissions are harmful to health and the environment. All such claims are expressly or impliedly preempted by the federal Telecommunications Act (the "TCA") and barred by the exclusive authority Congress has given the Federal Communications Commission ("FCC") to regulate RF emissions to ensure the operation of an inherently interstate, nationwide network. Second, plaintiffs' claims are procedurally improper. Plaintiffs failed to provide the statutorily required notice before bringing a claim under the Clean Water Act, and even if plaintiffs had given notice, the allegedly offending tower does not even exist yet, so the claim is not ripe. Plaintiffs' challenges to the City's and TRPA's approval of the 2018 Small Cell and the City's approval of the Ski Run Facility are also

untimely under the applicable statutes of limitations.  Third, neither the ADA nor the FHAA applies to Verizon because it is not a public entity and was not involved in the sale or rental of a dwelling.  Fourth, plaintiffs' state tort law claims, in addition to being preempted, fail because exposure to RF emissions within FCC limits is not an actionable tort under California law, and because Verizon's facilities were operated under valid government permits.  Fifth, claims based on Mr. Nel's tree removal are moot because the trees have already been removed, and in any event plaintiffs fail to allege any plausible basis for relief against Mr. Nel.  Finally, the TAC should be dismissed in its entirety because it violates the requirement for a "short and plain statement of the claim," and "simple, concise, and direct" averments under Fed. R. Civ. Pro. ("Rule") 8.

In short, plaintiffs cannot use this belated, procedurally improper challenge to rewrite federal regulations governing RF emissions, and TRPA's and the City's regulation of all wireless facilities within their jurisdiction.  The Court has afforded plaintiffs every opportunity to state a claim, but the Third Amended Complaint does not contain a single viable cause of action.  The Court should dismiss this case in its entirety with prejudice.

## SUMMARY OF THE COMPLAINT AND RELEVANT FACTS

According to Plaintiffs, "[t]he present litigation is the . . . culmination after several years of many urgent but fruitless appeals at the local municipal, regional, and federal levels. . . . Plaintiffs and innumerable other individuals and groups have strenuously objected to the unbridled rollout of wireless facilities within the Lake Tahoe Basin to TRPA's Board at nearly every one of [their] meetings over the better part of a year."  TAC, ¶ 19.  Yet plaintiffs did not timely seek judicial review of *any* of those prior decisions.  Their state-court lawsuit challenging the City's approval of the Ski Run Facility was dismissed with prejudice as untimely,[1] and the only other prior approvals mentioned in the TAC are the City's and TRPA's separate permits for the 2018 Small Cell nearly four years ago (TAC, ¶¶ 94, 213).  The limitations period to challenge a TRPA permit is 60 days after issuance.  Tahoe Regional Planning Compact (the "Compact"), Art. VI(j)(4).  Any challenge to a City permit must be filed and served on the City within 90 days after

---

[1] *See* City's Request for Judicial Notice (ECF no. 63-1), Exhibits A-D.

issuance.  Cal. Govt. Code § 65009(c)(1)(E).  Plaintiffs do not – and cannot – allege that they challenged either TRPA's or the City's approval of the 2018 Small Cell within the applicable limitations period.

Instead, their wholesale attack on TRPA's (and the FCC's) regulation of wireless facilities is premised on TRPA's approval of the Ski Run Facility, and an unrelated TRPA permit for Mr. Nel to remove 31 trees that posed a fire hazard on his property.  Plaintiffs argue that the two permits were inextricably related and thus evidence of "piecemealing" (TAC, ¶¶ 88-92), but they admit that the City ordered Mr. Nel to remove the trees to reduce wildfire risk (TAC, ¶ 21), that TRPA's forester chose the specific trees to be removed (TAC, ¶ 88), and that TRPA's General Counsel and Governing Board determined that the two permits were unrelated (TAC, ¶¶ 90-92).  They also admit that all 31 trees have since been removed *(id.*, ¶ 92).

Plaintiffs have left no doubt that their core concern is the alleged health and environmental effects of RF emissions and TRPA's alleged "institutional blindness to the hazards of pulse-modulated wireless radiation."  TAC, ¶ 12.  For example, they allege that "TRPA actively promotes hazardous wireless infrastructure with no evaluation of the environmental impacts" (*id.*, ¶ 16), and that Ms. Eisenstecken was driven from her home by the mere threat that "increased and untested RFR exposures [from the as yet unbuilt Ski Run Facility] would have placed her health and wellbeing and that of her two young children in immediate jeopardy." *Id.*, ¶ 21.  Plaintiffs even allege that the "dangers facing Plaintiff Benedict on account of the wireless radiation being transmitted from the [2018 Small Cell] are a matter of life and death."  *Id.*, ¶ 225.

Plaintiffs made very similar claims in their first amended complaint (ECF no. 5) (the "FAC").  In moving to dismiss that earlier complaint, Verizon and Mr. Nel explained that the FCC had long had exclusive authority to regulate RF emissions, which preempted or otherwise barred all claims in the FAC.  ECF no. 17 at 5-11.  Rather than defend the validity of these claims, plaintiffs sought and obtained leave to file a second amended complaint (ECF no. 48) (the "SAC"), and then a third.  In so doing, plaintiffs have abused the Court's generous approach to leave to amend.  In addition to adding new parties (plaintiff Benedict and defendant City) and new

claims (alleged water pollution), each amendment has made the complaint more prolix and less comprehensible.  The FAC was 41 pages, the SAC was 80, and the TAC is 114 pages.

## LEGAL STANDARD

Under Rule 12(b)(1), the court must dismiss a complaint for lack of subject-matter jurisdiction if the Plaintiff's claims are not ripe, or if they are moot.  *See Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010) (ripeness); *White v. Lee*, 227 F.3d 1214, 1242-44 (9th Cir. 2000) (mootness).  If a defendant files a motion under Rule 12(b)(1), the party opposing the motion then bears the burden of establishing the court's jurisdiction. *Chandler,* 598 F.3d at 1122.

To survive a motion to dismiss under Rule 12(b)(6), Plaintiffs must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  While the court must accept well-pled allegations as true, this does not apply to "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).  Nor does the Court accept allegations that are contradicted by matters of public record or otherwise subject to judicial notice.  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).  "Where a state law claim is preempted by federal law, that claim must be dismissed for failure to state a claim because the claimant cannot prove any set of facts that will support the claim for relief."  *Kent v. DaimlerChrysler Corp.*, 200 F.Supp.2d 1208, 1212 (N.D. Cal. 2002).

An action may also be dismissed under Rule 41(b) if "the plaintiff fails to prosecute or to comply with these rules or a court order."  This includes dismissal of a complaint that violates the requirements under Rule 8 for a "short and plain statement of the claim" for relief, and that "[e]ach allegation must be simple, concise, and direct." *See, e.g., Nevijel v. North Coast Life*

*Ins. Co.*, 651 F.2d 671, 673 (9th Cir. 1981) ("A complaint which fails to comply with rules 8(a) and 8(e) may be dismissed with prejudice pursuant to Rule 41(b).").

**ARGUMENT**

Verizon and Mr. Nel join the arguments in TRPA's and the City's concurrent motions to dismiss. In addition, the Court should dismiss the TAC for the following independent reasons.

**I.    All claims regarding the alleged environmental impacts of RF emissions are either preempted by the Telecommunications Act or barred because they conflict with the FCC's authority to regulate RF emissions.**

While packaged in various ways among the numerous claims, the gravamen of the TAC is that: (1) RF emissions are allegedly hazardous to human health and the environment; (2) TRPA and the City are required to regulate such impacts in order to comply with the Compact, TRPA's regulations, CEQA, and a host of federal statutes, but have failed to do so; and (3) exposing plaintiff Benedict to RF emissions constitutes various torts under state law. All but one of plaintiffs' claims are based on this theory (claim 5 is the sole exception) and as such, they are either preempted by the TCA (as to claims against the City and Verizon) or conflict with the FCC's regulations establishing safe levels of RF emissions (as to claims against TRPA). Either way, they fail to state a claim for relief.

**A.    Congress authorized the FCC to regulate RF emissions to balance competing interests and achieve national uniformity in wireless standards.**

For decades, Congress has given the FCC "comprehensive powers" over all types of radio communications, and the FCC has exercised "federal primacy" over the technical aspects of such communications. *Cohen v. Apple, Inc.*, 2020 WL 6342922, at \*3, \*10 (N.D. Cal. 2020) (describing the background of FCC regulation). Specifically, regarding RF emissions, Congress determined that "it is in the national interest that uniform, consistent requirements, with adequate safeguards of the public health and safety" be established, and it authorized the FCC to adopt regulations that would "ensure an appropriate balance in policy" between the objectives of safety and the rapid deployment of wireless telecommunications services. *Id*. at \*10.

As directed by Congress, the FCC issued its RF exposure regulations in 1996, explaining that they "provided a proper balance between the need to protect the public and workers from exposure to excessive RF electromagnetic fields and the need to allow communications services to readily address growing marketplace demands."  *Ibid.* (quoting *In the Matter of Procedures for Reviewing Requests for Relief from State and Local Regulations Pursuant to Section 332(c)(7)(B)(v) of the Communications Act of 1934*, 12 FCC Rcd. 13494, ¶¶ 5, 29 (FCC rel. August 25, 1997)).

In the TCA, while Congress preserved traditional state and local zoning authority, it expressly prohibited state and local governments from regulating RF emissions based on health or environmental impacts:

> No State or local government or instrumentality thereof may regulate the placement, construction, and modification of personal wireless service facilities on the basis of the environmental effects of radio frequency emissions to the extent that such facilities comply with the Commission's regulations concerning such emissions.

47 U.S.C. § 332(c)(7)(B)(iv).  "Environmental effects" as used in the statute include both impacts on human health and the wider environment, including plants and wildlife.  *See T-Mobile Northeast, LLC v. Town of Ramapo,* 701 F. Supp. 2d 446, 460 (S.D.N.Y. 2009) (includes human health concerns); *Jaeger v. Cellco Partnership,* 2010 WL 965730, * 10 (D. Conn. 2010) ("The plain meaning of the term 'environmental effects' incorporates adverse effects on all biological organisms"), *aff'd*, 402 Fed.Appx. 645 (2d Cir. 2010), *cert. denied*, 564 U.S. 1038 (2011).

The current RF regulations are located at 47 C.F.R. §§ 1.1307(b), 1.1310, 2.1091, 2.1093.  These regulations "are generally applicable to *all* facilities, operations and transmitters regulated by the [FCC]," including cell towers.  47 C.F.R. § 1.1307(b)(1) (emphasis added). Thus, both the Ski Run Facility and the 2018 Small Cell are legally required to comply with the FCC limits on RF emissions.  Notably, plaintiffs do not (and cannot) allege otherwise.

### B. Plaintiffs cannot challenge the FCC regulations in this Court.

Plaintiffs do not expressly challenge the FCC regulations, and cannot do so (expressly or otherwise) in this Court. *Jaeger, supra,* 2010 WL 965730, * 10 ("Because Congress has granted the FCC authority to regulate RF emissions from cellular towers, where a party's true claim is against the FCC and its policies concerning RF emissions, as it is in the instant matter, the proper procedure is to petition the FCC," and if necessary, seek judicial review in the Court of Appeals). To the extent plaintiffs seek to challenge the FCC regulations, they are in the wrong forum and their claims must be dismissed. *See* 47 U.S.C. § 402(a) ("[a]ny proceeding to enjoin, set aside, annul or suspend any order of the [FCC] . . . shall be brought as provided by and in the manner prescribed in chapter 158 of Title 28"); 28 U.S.C. § 2342 ("the court of appeals has exclusive jurisdiction to enjoin, set aside, suspend (in whole or in part), or to determine the validity of . . . all final orders of the [FCC]. . . .").

### C. All claims based on the City's failure to regulate RF emissions are expressly preempted by the Telecommunications Act.

Claims 9-11 are based in part on the contention that the City must deny or revoke wireless facility permits based on their RF emissions. TAC, pp. 96-107. These claims are expressly preempted by the TCA. 47 U.S.C. § 332(c)(7)(B)(iv). Without acknowledging this preemption, plaintiffs attempt to plead around it by arguing that shutting down or relocating the 2018 Small Cell is necessary to grant plaintiff Benedict a "reasonable accommodation" under the ADA or FHAA. TAC ¶¶ 203-18. This argument has no merit. In rejecting a virtually identical claim, the court in *Wolf v. City of Millbrae*, 2021 WL 3727072 (N.D. Cal. 2021), *appeal filed*, 9th Cir. (Oct. 7, 2021), held:

> Wolf's requested accommodation is per se unreasonable. His accommodation request to the City seeks either (1) prohibiting T-Mobile from operating the cell site at its current location or (2) applying RF exposure standards that differ from the standards set by the FCC. The City's grant of either accommodation would violate the TCA's protection against local regulation of "the placement, construction, and modification of personal wireless service facilities on the basis of the environmental effects of radio frequency emissions" where the facility complies with the FCC's RF exposure regulations.

7

BRIEF OF DEFENDANTS VERIZON WIRELESS AND NEL I/S/O MOT. TO DISMISS THIRD AMENDED COMPLAINT
CASE NO. 2:20-CV-02349-TLN-CKD

2021 WL 3727072, * 4.  Other courts have found similar claims preempted.  *See Jaeger, supra*, 2010 WL 965730, * 4 (claims that town's approval of tower violated various federal laws due to impact of RF emissions on human health and wildlife held preempted); *Merrick Gables Ass'n, Inc. v. Town of Hempstead*, 691 F.Supp.2d 355, 362-3 (E.D.N.Y. 2010) (dismissing claims based on town's alleged agreement to adopt a moratorium on wireless facilities because "[the TCA] clearly prohibits Hempstead from preventing the installation of wireless service equipment based on concerns about the health risks associated with the equipment").  To the extent that claims 9-11 are based on the City's failure to regulate RF emissions, they are preempted and must be dismissed.

### D.   Plaintiffs' state-law claims are preempted because they conflict with the FCC's RF emissions regulations.

In counts 1, 4, 8, and 10-13, plaintiffs assert state-law causes of action based on the claim that RF emissions are harmful to human health and the environment.  For plaintiffs to succeed on any of these claims, the Court or a jury would have to agree that RF emissions within FCC limits are harmful, and reject the FCC's determination that facilities that comply with its RF emission regulations are safe.  Given that unavoidable conflict between plaintiffs' claims and the FCC's regulations, these claims are preempted.

In addition to express preemption in 47 U.S.C. § 332(c)(7)(B)(iv) discussed above, the doctrine of implied conflict preemption and its application to plaintiffs' state law claims are both well established.  Conflict preemption arises when (1) "compliance with both federal and state regulations is a physical impossibility," or (2) "the challenged state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."  *Nat. Fed. of the Blind v. United Airlines, Inc.*, 813 F.3d 718, 724 (9th Cir. 2016) (quoting *Arizona v. United States,* 567 U.S. 387, 399 (2012)).  "Federal regulations preempt state laws in the same fashion as congressional statutes."  *Farina v. Nokia, Inc.,* 625 F.3d 97, 115 (3d Cir. 2010).

Here, allowing a judge or jury to second-guess the FCC's regulations would stand as an obstacle to accomplishing Congress's stated objective of having a single, nationwide RF emissions standard that balances the competing objectives of safety and promoting the

development of wireless telecommunications services.  As the Sixth Circuit explained in *Robbins v. New Cingular Wireless PCS, LLC,* 854 F.3d 315 (6th Cir. 2017), "by delegating the task of setting RF-emissions levels to the FCC, Congress authorized the federal government – and not local governments  – to strike the proper balance between protecting the public from RF-emissions exposure and promoting a robust telecommunications infrastructure."  Further, "[a]llowing RF-emissions-based tort suits would upset that balance and impair the federal government's ability to promote the TCA's goals . . . Widespread litigation would also shift the power to regulate RF emissions away from the FCC and into the hands of courts and state governments."  854 F.3d at 319-320.

As the Sixth Circuit recognized, it is simply not possible to have a nationwide system of RF regulation if a plaintiff can ask a judge or jury to declare the FCC's regulations inadequate to protect public health and the environment.  Numerous courts around the country have reached the same conclusion.  *See Farina, supra,* 625 F.3d at 115 (affirming preemption dismissal of putative class action alleging that cell phone antennas expose users to harmful RF emissions); *Kaspers v. Verizon Wireless Serv*., 2021 WL 2193584 at *2 (N.D. Ga. 2021) ("as multiple courts . . . have held, such challenges would effectively allow private plaintiffs to do through law suits what state and local governments cannot do through regulation, thereby undermining the FCC's delegated authority"); *Cohen, supra,* 2020 WL 6342922, at *10  (granting summary judgment to Apple, holding that putative class claims based on iPhone RF exposure were preempted); *Fontana v. Apple Inc.,* 321 F. Supp. 3d 850 (M.D. Tenn. 2018) (dismissing with prejudice as preempted a personal injury action for alleged injuries from RF exposure); *Merrick Gables Assoc., supra,* 691 F.Supp.2d at 364-6 (dismissing nuisance claim based on RF emissions from wireless equipment on utility poles); *Bennett v. T-Mobile U.S.A., Inc.,* 597 F. Supp. 2d 1050 (C.D. Cal. 2008) (dismissing personal injury claims based on cell phone RF emissions as conflict preempted); *Jasso v. Citizens Telecomm. Co. of Cal., Inc.,* 2007 WL 2221031 (E.D. Cal. 2007) (tort claim based on RF emissions from cell tower dismissed on conflict preemption grounds), *R&R adopted*, 2007 WL 2688837 (E.D. Cal. 2007); *Stanley v. Amalithone Realty, Inc.,*

94 A.D.3d 140, 145 (2012) ("To the extent that a law or regulation of this state conflicts with the [1996 Act] or any of the FCC's valid regulations under that statute, it is preempted and has no effect.").

These courts have dismissed a variety of state-law claims, including the same tort claims brought here.  *See, e.g., Robbins*, *supra*, 854 F.3d at 318-320 (nuisance and negligence claims preempted); *Merrick Gables*, *supra*, 691 F.Supp.2d at 365-366 (private nuisance claim preempted); *Stanley*, *supra*, 94 A.D.3d at 142, 145 (nuisance, trespass, and assault[2] claims preempted).  Regardless of legal theory, *all* of the claims dismissed in the foregoing cases share one thing in common with the Plaintiffs' claims here: they would impose liability under state law based on the allegedly harmful effects of RF emissions.  All such claims are preempted because allowing courts or juries to determine "safe" levels of RF emissions would upset the careful balance struck by the FCC between an efficient, nationwide communications network and the safety of RF emissions.  *Cohen, supra*, 2020 WL 6342922 at *9, *16 ("[T]he [FCC] intended to create a uniform, nation-wide regime that balanced competing objectives of safety and efficiency. . . . Allowing a federal jury to now second-guess the agency determinations would interfere with the balance struck in the equipment-authorization program.  The federal regulations must displace plaintiffs' claims.").

### E.     All other claims based on allegedly harmful RF emissions are barred because the FCC regulations control.

Recognizing that their primary claims are preempted, plaintiffs attempt to plead around this fact by alleging that TRPA's permitting of wireless facilities "is a major federal action," and that the TCA "does not and cannot preempt the TRPA from conducting its own comprehensive environmental reviews of wireless projects under the Compact, or NEPA, and TRPA is required

---

[2] Though the assault claim is not mentioned in the Appellate Division decision, it was included among the numerous claims dismissed by the lower court and affirmed by the Appellate Division. *See Stanley v. Amalithone Realty, Inc.*, 31 Misc.3d 995, 998, 1006-1007 (N.Y. Sup. 2011), *aff'd*, 94 A.D.3d 140 (2012).

10

BRIEF OF DEFENDANTS VERIZON WIRELESS AND NEL I/S/O MOT. TO DISMISS THIRD AMENDED COMPLAINT
CASE NO. 2:20-CV-02349-TLN-CKD

by the Compact to do so in this case." TAC, ¶¶ 140, 144.[3]  In other words, plaintiffs allege that TRPA is a federal entity and can set its own RF regulations, and that its failure to second guess the FCC regarding the health effects of RF emissions violates the Compact and numerous federal statutes.[4]  But just as courts and juries may not second-guess the FCC's RF regulations, TRPA cannot do so either, even assuming that any attempt by TRPA to set its own RF standards would be equivalent to federal law and therefore not preempted under the Supremacy Clause.[5]

When two federal laws are alleged to be in conflict, "then the courts must strive to harmonize the two laws, *giving effect to both laws if possible*."  *Swinomish Indian Tribal Community v. BNSF Rwy. Co.,* 951 F.3d 1142, 1156 (9th Cir. 2020) (quoting *Ass'n of Am. R.R.s v. S. Coast Air Quality Mgmt. Dist.,* 622 F.3d 1094, 1097 (9th Cir. 2010)) (emphasis added). Plaintiffs' proposed interpretation of the Compact and NEPA violates this fundamental rule of construction because it would require TRPA to ignore the FCC's regulations and reach a different conclusion as to safe levels of RF emissions.

Currently, TRPA's existing regulations are in complete harmony with the FCC's statutory authority to regulate RF emissions.  While TRPA protects the general environment of the Tahoe region by regulating impacts on air quality, water quality, and other natural and scenic resources, it properly defers to the FCC to regulate RF emissions.  Similarly, the other statutes

---

[3] Plaintiffs make clear that the purpose of this "comprehensive review" is to stop deployment of wireless infrastructure based on the alleged environmental impacts of its RF emissions.  *Id.*, ¶¶ 8, 111.

[4] Plaintiffs' argument as to TRPA also implicitly concedes that claims against Verizon and the City based on alleged dangers of RF emissions are preempted.

[5] While the Compact is considered federal law for jurisdictional and preemption purposes, TRPA's regulations may or may not have such status, depending on the particular regulation.  *See Tahoe Regional Planning Agency v. King*, 233 Cal.App.3d 1365, 1383 (1991) ("[r]egulations and ordinances enacted by TRPA pursuant to its powers under the Compact do not automatically acquire the status of federal law").  Without conceding the point, we assume for purposes of this motion to dismiss that if TRPA attempted to regulate RF emissions, those regulations would have the status of federal law for both purposes.

1    cited in the TAC[6] all address some other general concern – such as environmental impacts of

2    federal action or protecting the disabled from discrimination – but do not even address RF

3    emissions.  This is not surprising, because Congress placed responsibility for regulating RF

4    emissions and other technical issues related to radio communications solely with the FCC.

5    Moreover, contrary to plaintiffs' assertion, TRPA's approval of wireless facilities is not a "major

6    federal action."  *California Tahoe Regional Planning Agency v. Sahara Tahoe Corp.*, 504

7    F.Supp. 753, 763 (D. Nev. 1980) ("the Court rejects plaintiffs' contention that the nexus between

8    TRPA and the federal government renders TRPA's approval of the Sahara project [a] major

9    federal action . . . and finds that TRPA is not subject to the provisions of NEPA").

10          Interpreting these other general laws, as plaintiffs urge, to require TRPA to regulate RF

11   emissions would fail to give effect to the TCA and the FCC's RF regulations.  It would also

12   violate the "commonplace of statutory construction that the specific governs the general."

13   *Andrews v. Sirius XM Radio, Inc.,* 932 F.3d 1253, 1263 (9th Cir. 2019) (quoting *Morales v.*

14   *Trans World Airlines, Inc.,* 504 U.S. 374, 384 (1992)); *see also Swinomish, supra,* 951 F.3d at

15   1160 ("a specific statute will not be controlled or nullified by a general one, regardless of the

16   priority of enactment").

17          There is simply no basis for interpreting any of the statutes Plaintiffs cite as *requiring*

18   TRPA to unilaterally upset the careful balance the FCC has struck – at the express direction of

19   Congress – between safe levels of RF emissions and the promotion of a robust, nationwide

20   communications network.  On the contrary, plaintiffs' theory presents a textbook example of

21   why a general statute addressed to a distinct topic (e.g., NEPA) cannot be read to undermine

22   Congress's goal of national uniformity in communications policy, and its very specific direction

23   to the FCC to set RF emissions standards to achieve an appropriate balance between competing

24   objectives.  Plaintiffs' contrary interpretation would not only invite conflict but require it, and

25   their proposed construction of federal statutes fails under established rules of statutory

26

27   _____

28   [6] As discussed in TRPA's motion to dismiss, CEQA, NEPA, and the APA, all cited in the TAC,
     do not even apply to TRPA.

1  construction.  None of these statutes impose a duty on TRPA to second-guess the FCC's RF

2  emissions limits, and claims 1-4 and 6-11 fail to state a claim as a result.

3  **II.    Counts 5 and 9-13 should also be dismissed because they fail to state any viable**

4  **claim.**

5      The defenses discussed above bar all of plaintiffs' claims.  But the TAC should also be

6  dismissed in its entirety for the independent reason that it fails to allege "enough facts to state a

7  claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  This is true for all counts

8  in the TAC, but this section will focus on counts 5 and 9 through 13, the only ones that purport

9  to state a claim against Verizon or Mr. Nel.

10      **A.  Count 5 must be dismissed for lack of jurisdiction.**

11      The TAC includes an entirely new claim alleging that the City**,** TRPA, and Verizon are

12  in violation of "the Federal and State Clean Water Acts." TAC, p. 76.  Because the Court lacks

13  jurisdiction to hear a claim under applicable federal or state water pollution control laws, count 5

14  must also be dismissed.

15      Congress passed the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251-1388

16  ("Clean Water Act" or "CWA"), with the objective of restoring and maintaining the "chemical,

17  physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a).  To achieve that

18  objective, the Clean Water Act established requirements related to wastewater treatment, water

19  quality, and, most relevant to count 5, the discharge of pollutants to "waters of the United

20  States."  *See*, *e.g.,* 33 U.S.C. §§ 1281 (publicly owned treatment works), 1311 (effluent

21  limitations), 1342 (National Pollutant Discharge Elimination System ("NPDES") permits).

22  While the United States Environmental Protection Agency ("the EPA") was initially tasked with

23  implementing the CWA nationally, that authority transfers to a state government upon a showing

24  that state law provides adequate authority to implement the requirements of the Act.  *Id.* at §

25  1342(b).  Within California, the EPA has delegated responsibility for implementing the NPDES

26  permitting program to the California State Water Resources Control Board and the nine

27  Regional Water Quality Control Boards that operate underneath the State Board (collectively,

28

the "Water Boards").  *See* California State Water Resources Control Board, "National Pollutant Discharge Elimination System (NPDES) – Wastewater," available at www.waterboards.ca.gov/water_issues/programs/npdes/ (visited July 20, 2022).

The Clean Water Act provides limited authorization for citizens to commence a civil action in an appropriate federal district court against any person who is alleged to be in violation of an effluent standard or limitation, or order related thereto – but that authorization is not absolute.  33 U.S.C. § 1365.  The Act specifies that no such civil action may be filed until 60 days *after* the date on which the citizen provides notice of the alleged violation to the EPA, the relevant state environmental agency (here, the State Water Resources Control Board), and the alleged violator(s).  *Id*. At § 1365(b).  Under Ninth Circuit precedent, the requirement to provide notice of the alleged violation prior to commencing a civil action is jurisdictional – "when a party fails to give notice, the court must dismiss the claim."  *Tan Phu Cuong Inv. LLC v. King Cty.*, 831 Fed.Appx. 235 (9th Cir. 2020), citing *Center for Biological Diversity v. Marina Point Development Co.*, 566 F.3d 794, 800 (9th Cir. 2009).

The TAC does not allege that plaintiffs have complied with the notice requirement in 33 U.S.C. § 1365.  Because plaintiffs do not allege compliance with this jurisdictional requirement, this Court lacks jurisdiction over the claim that defendants are in violation of the Clean Water Act and count 5 must be dismissed under Federal Rule of Civil Procedure 12(b)(1).

The State of California has also adopted water quality requirements that go beyond the requirements of the Clean Water Act in the Porter-Cologne Water Quality Control Act ("Porter-Cologne Act").  To the extent count 5 includes a claim based on an alleged violation of California State law that would not be subject to the Clean Water Act's notice requirement, this Court would lack jurisdiction to hear such a claim as well.  The TAC offers no basis for this Court's jurisdiction over an alleged violation of a state-only provision of the Porter-Cologne Act – and nor could it.  Section 13361 of that Act limits the authority to file a civil action to address an allegedly unauthorized discharge to the California Attorney General and directs that such complaints must be filed in the California State court for the county where the discharge is

1  alleged to have been made.  California Water Code § 13361.  Because there is no basis for this

2  Court to exercise jurisdiction over an alleged violation of a State-only provision of the Porter-

3  Cologne Water Quality Control Act, to the extent such a claim is included in count 5, it also

4  must be dismissed under Federal Rule of Civil Procedure 12(b)(1).

5        If the Court concludes that it lacks subject matter jurisdiction, "the court must dismiss the

6  action" and no further inquiry need be conducted.  F.R.C.P. 12(h)(3).  Should the Court find that

7  it does have jurisdiction to hear count 5, however, the Court still must dismiss the claims

8  included in count 5 under F.R.C.P. 12.

9        Section 1365 of the Clean Water Act only authorizes a civil action against a person who

10  is alleged "to be in violation of" an effluent standard or order from the EPA or against the EPA

11  (or state agency) who has allegedly failed to take an action that is not discretionary under the

12  Act.  33 U.S.C. § 1365(a)(1) & (2).  In both instances, a plaintiff must allege that the defendant

13  is violating the Clean Water Act at the time the complaint is filed.  The TAC, however, fails to

14  allege a current violation of the CWA based on an existing discharge from the Ski Run Facility –

15  nor could plaintiffs do so as the monopine has not been built yet and does not exist.  Instead, the

16  TAC relies on allegations of discharges that they assert "will inevitably occur from the Verizon

17  monopine once built."  TAC at ¶ 165.  Even assuming plaintiffs' allegations about future

18  discharges are true (they are not), the Clean Water Act simply does not provide for judicial

19  review based on plaintiffs' belief that a violation will occur in the future.  33 U.S.C. § 1365.

20  Similarly, to the extent count 5 includes allegations that the permit for the Ski Run Facility was

21  flawed, and the Court were to accept those allegations as true, the allegations would still fail to

22  state a claim under 33 U.S.C. § 1365 because they do not include an allegation of a current

23  violation.

24        **B.  Count 9 fails to state a claim under the ADA or the FHAA, which in
       any event do not apply to Verizon or Mr. Nel.**

25

26        In count 9, plaintiffs assert claims under the Americans with Disabilities Act (42 U.S.C.

27  § 12101 *et seq.*) ("ADA") and the Fair Housing Amendments Act of 1989 (42 U.S.C. §§ 3601 *et

28  seq.*) (the "FHAA").  They allege that these statutes required TRPA and the City to deny or

15

revoke permits for wireless facilities based on their RF emissions, and Verizon to shut down or remove the 2018 Small Cell, all as a "reasonable accommodation" to plaintiffs Eisenstecken and Benedict.  TAC, ¶¶ 202-19.  As noted above, plaintiffs fail to state a cause of action under either statute because the proposed accommodation is "per se unreasonable."  *Wolf v. City of Millbrae*, *supra,* 2021 WL 3727072, *4.  In addition, as explained in more detail in the City's motion to dismiss, the FHAA does not apply to this case, because neither Verizon nor any other defendant was involved in the sale or rental of a dwelling.  *Salisbury v. City of Santa Monica*, 998 F.3d 852, 858 (9th Cir. 2021); *Wolf, supra*, 2021 WL 3727072, *6.

Furthermore, Title II of the ADA[7] does not apply to Verizon or Mr. Nel.  That statute applies only to discrimination against disabled individuals by a "public entity."  42 U.S.C. § 12132.  A "public entity" is a "state or local government," or "any . . . instrumentality of a State or States or local government."  42 U.S.C. § 12131(1).  Thus, Verizon is a "public entity" only if it is an "instrumentality" of a state or local government.  Plaintiffs allege no legal or factual basis to support such a conclusion, but merely assert that Verizon is a "public entity" because it is considered a public utility in certain regulatory contexts.  TAC ¶¶ 205, 210.  This is a baseless argument, as plaintiffs admit that Verizon is "technically a private entity" (*id.*, ¶ 210), and that TRPA cannot delegate its governmental functions to "private, self-interested commercial companies such as Verizon."  *Id.*, ¶ 143.  Of course, Mr. Nel, as a private individual, is also not a "public entity," and therefore neither he nor Verizon have any obligations to any plaintiff under the ADA.[8]

### C.  Claims 10 through 13 fail to state any viable claim, even if they were not preempted (which they are).

In claims 10 through 13, plaintiff Benedict asserts state-law tort claims for public and private nuisance, trespass, and assault against various defendants.  Claim 10 names TRPA, the City, Verizon, and Mr. Nel, claim 11 names only the first three (omitting Mr. Nel), and claims

---

[7] Plaintiffs do not attempt to allege any claim under any other part of the ADA.

[8] It is not clear from the TAC whether the plaintiffs allege that Mr. Nel is liable under the ADA, so we address that issue in an abundance of caution.

12 and 13 name only Verizon as a defendant.  Regardless of the particular defendants named, none of these counts alleges a plausible claim for relief.  The only "facts" alleged are based on the allegedly harmful RF emissions from the Ski Run Facility (which has not been built) and the 2018 Small Cell, which means these claims are preempted as discussed above.  But quite apart from federal preemption, these counts fail to state a viable claim purely as a matter of state law.

### 1. RF emissions within FCC limits will not support tort liability under California law.

In California, alleged impacts of electromagnetic radiation such as RF emissions will not support tort liability.  In *San Diego Gas & Electric Co. v. Superior Court*, 13 Cal. 4th 893, 935 (1996) ("*SDG&E*"), the plaintiff alleged that the utility was liable for trespass because it "intended to and did emit electromagnetic radiation onto plaintiffs' property without plaintiffs' consent."  The California Supreme Court held that "plaintiffs do not and cannot state facts sufficient to constitute a cause of action for trespass under the substantive law of this state," which does not permit trespass liability for intangible intrusions such as noise, odor, or light. *Id.*, 13 Cal. 4th at 935.  The court held that "electric and magnetic fields arising from powerlines are wholly intangible phenomena . . . akin to television and radio waves," and such intangible intrusions will support a trespass claim only when they cause "*physical* damage to [plaintiff's] *property*."  *Ibid*. (emphasis in original).  There are no such allegations in the TAC.

As plaintiffs concede, both their public and private nuisance claims require plaintiff Benedict to plausibly allege that Verizon's RF emissions cause an *unreasonable* interference with his use and enjoyment of his property.  TAC, ¶¶ 225, 236.  Based on this requirement, both *SDG&E* and *Wolf, supra,* dismissed nuisance claims based on electro-magnetic fields.  As the court explained in *SDG&E*, in order for the plaintiffs to prevail on their private nuisance claim, "the trier of fact would be required to find that *reasonable persons viewing the matter objectively* (1) would experience a substantial fear that the fields cause physical harm and (2) would deem the invasion so serious that it outweighs the social utility of SDG&E's conduct."

1    *SDG&E,* 13 Cal. 4th at 939 (emphasis added).[9]  Or, as the court in *Wolf* summarized,

2    "California's high court affirmed that the interference posed by electromagnetic frequency

3    emissions is determined by an objective standard without reference to the idiosyncrasies of the

4    plaintiff."  2021 WL 3727072, *8.

5         In dismissing Wolf's nuisance claim, the court rejected his reliance on the so-called

6    "Building Biology Standards" invoked by plaintiffs here, noted the ubiquity of cellular

7    infrastructure and the lack of any allegation that Wolf's neighbors "suffer even a degree of his

8    same symptoms," and held that "Wolf therefore cannot meet the necessary objective standard to

9    establish nuisance."  *Ibid*.  Nor can plaintiff Benedict, who affirmatively alleges that he is

10   uniquely vulnerable to RF emissions (TAC, ¶¶ 228), and despite the continuous operation of the

11   2018 Small Cell for "the past three and one- half years" (*id.*, ¶ 94), is the only one complaining

12   about it.

13        The court in *SDG&E* relied on the same objective standard to affirm dismissal of a

14   nuisance claim based on the plaintiffs' fear of being harmed by electromagnetic radiation from

15   power lines.  The California Supreme Court held the trier of fact could not possibly make the

16   required findings, because they would conflict with the findings of the California Public Utilities

17   Commission (which has primary authority under state law to regulate electromagnetic fields

18   from power lines) "that the available evidence does *not* support a reasonable belief that 60 Hz

19   electric and magnetic fields present a substantial risk of physical harm. . . ."  13 Cal. 4th at 939

20   (emphasis in original).

21        The same rationale bars plaintiffs' nuisance and assault claims here.  To hold any

22   defendant liable under either theory, the Court or a jury would have to find that RF emissions at

23   levels deemed safe by the FCC (the agency charged with making that determination) are in fact

24   harmful.  Quite apart from federal preemption, such a claim is not viable under California law.

25

26

27   [9] The assault claim requires a similar objective finding, that "plaintiff reasonably believed he was
     about to be touched in a harmful or offensive manner."  *Robles v. Agreserves, Inc.*, 158 F.Supp.3d
28   952, 985-86 (2016)

18

BRIEF OF DEFENDANTS VERIZON WIRELESS AND NEL I/S/O MOT. TO DISMISS THIRD AMENDED COMPLAINT
CASE NO. 2:20-CV-02349-TLN-CKD

1

### 2.   Plaintiffs' nuisance claims are barred by California Civil Code Section 3482.

2

3       Finally, any nuisance claim is barred by California Civil Code section 3482, which

4   provides that "nothing which is done or maintained under the express authority of a statute can

5   be deemed a nuisance."  Under this statute, courts have routinely held that work authorized in a

6   permit or other governmental approval cannot constitute a nuisance.  *See, e.g., Public Watchdogs*

7   *v. Southern California Edison Company*, 2019 WL 6497886, *17 (S.D. Cal. 2019) (collecting

8   cases and holding that "[t]o the extent that Plaintiff's nuisance cause of action is predicated on

9   the Private Defendants' actions pursuant to licenses and certificates issued by the NRC, it is

10   barred by Section 3482.").  The nuisance claims in counts 10 and 11 are based entirely on the

11   operation (or planned operation) of wireless facilities pursuant to permits issued by TRPA and

12   the City, and are thus barred as a matter of law by Section 3482.

13   ### III.   All claims regarding the City's approval of the Ski Run Facility, TRPA's or the City's approval of the 2018 Small Cell, or any other existing wireless facilities are untimely.

14

15       Any action challenging a TRPA decision – whether to adopt or amend a regulation or

16   approve or deny a permit – "shall be commenced within 60 days after final action by the

17   agency."  Compact, Art. VI(j)(4).  Similarly, any action to "attack, review, set aside, void, or

18   annul any decision on" a land use permit issued by the City must be filed and served on the City

19   within 90 days after the City's decision to issue the permit.  Cal. Govt. Code § 65009(c)(1)(E).

20   This includes challenges based on alleged conflicts of interest, or any other aspect of "the

21   proceedings, acts, or determinations taken, done, or made prior to" the decision to grant the

22   permit.  California Govt. Code § 65009(c)(1)(F).  Taken together, these provisions bar any claim

23   regarding the City's approval of the Ski Run Facility, TRPA's or the City's approval of the 2018

24   Small Cell, or any other existing wireless facility.

25       Plaintiffs admit that the City approved the Ski Run Facility in January 2020, and both the

26   City and TRPA issued permits for the 2018 Small Cell in 2018.  TAC, ¶¶ 77, 94, 213.  They do

27   not allege that TRPA approved any existing wireless facilities within 60 days before the TAC

28

---

BRIEF OF DEFENDANTS VERIZON WIRELESS AND NEL I/S/O MOT. TO DISMISS THIRD AMENDED COMPLAINT
CASE NO. 2:20-CV-02349-TLN-CKD

1    was filed, but nevertheless attack TRPA's prior approval of every wireless facility within its

2    jurisdiction on various grounds.  Counts 1-13 of the TAC all rest in part on allegations regarding

3    either the City's approval of the Ski Run Facility, the 2018 Small Cell or other, unspecified

4    facilities approved at unspecified dates before this action was filed, and must therefore be

5    dismissed as untimely.  Compact, Art. VI(j)(4); California Govt. Code section 65009(c)(1)(E).

6    This includes all allegations regarding alleged "piecemealing," conflicts of interest, or other

7    claims to the extent they rely on allegations regarding any existing wireless facilities.

8         Plaintiffs do not (and cannot) allege any way to avoid the limitations bar with respect to

9    TRPA's prior approvals.  They do attempt to plead around the issue with respect to the City's

10   approval of the 2018 Small Cell and the Ski Run Facility, but that attempt fails.  With respect to

11   the 2018 Small Cell, they argue that Verizon has violated the terms of the permit, rather than

12   directly challenging the permit itself.  This effort fails for two reasons.  First, the alleged

13   violation is based solely on the claim that the facility's RF emissions are harming plaintiff

14   Benedict (TAC ¶¶ 106-7), and is therefore preempted by the TCA as discussed above.  47 U.S.C.

15   § 332(c)(7)(B)(iv).  Second, because plaintiffs challenge the very activity authorized by the

16   permit (operation of the small cell), their argument that it should be revoked is in fact a

17   challenge to the permit itself.  As explained in more detail in the City's motion to dismiss, courts

18   have consistently rejected all attempts to plead around the 90-day statute.  No matter how it is

19   framed, any claim that is in fact a challenge to a land use approval is subject to the 90-day

20   statute.  *See Honig v. S.F. Planning Dept.*, 127 Cal.App.4th 520, 528 (2005).

21        Plaintiffs attempt to plead around the limitations bar with respect to the City's approval

22   of the Ski Run Facility by alleging that the City's approval has expired because Verizon did not

23   "utilize" it within a year after it was issued, as required by a condition of approval.  TAC, ¶¶ 75-

24   84.  This claim is not plausible, given plaintiffs' admissions that "utilizing" the permit required

25   only that Verizon "move forward with its application for a necessary permit from TRPA," and

26   that it did so by "emailing a copy of the City permit to TRPA."  TAC, paragraphs 79, 85.  *See*

27   *Orellana v. Mayorkas*, 6 F.4th 1034, 1043 (9th Cir. 2021) (affirming dismissal because, given

28

plaintiff's admissions, "the complaint itself undermines Orellana's theory of the case and renders it implausible").

Plaintiffs attempt to undercut the force of their admission by failing to quote the email in question or attach it to the complaint, but the Court may take judicial notice of it as a matter of public record. *See* TRPA's Request for Judicial Notice (ECF no. 66), Exh. 13. As the email reveals, within two weeks of receiving the City permit, Verizon did more than just send a copy of the permit to TRPA. It relied on the permit to "move forward with its application" to TRPA by asking that TRPA "please advise when you can have this item on agenda for a hearing with your organization." *Ibid*. Plaintiffs also fail to acknowledge that the South Lake Tahoe City Attorney determined that Verizon had "utilized" the City permit as required by the condition of approval. *Id.*, Exh. 14.

In short, plaintiffs' argument that the City permit expired is contrary to their own admissions, and to matters of public record of which the Court may take judicial notice, and is thus not plausible. *Orellana, supra*. For this reason, there is no need for the Court to reach plaintiffs' related argument that the allegedly expired permit from the City somehow made TRPA's separate approval of the Ski Run Facility unlawful. TAC ¶¶ 85-86. In any case, even assuming their expired permit argument were not foreclosed (as it is), plaintiffs' underlying assumption that TRPA could not approve the facility without a current approval from the City is not supported by any authority.

The Court should dismiss claims 1-13 to the extent they are based on the City's approval of the Ski Run Facility, the approval or operation of the 2018 Small Cell, or any other existing wireless facility.

## IV. The Court should dismiss with prejudice all claims against Mr. Nel.

Based on the foregoing analysis, the Court has multiple grounds on which to dismiss all claims against both Verizon and Mr. Nel (as well as the other defendants). We address claims against Mr. Nel separately only because plaintiffs have refused defendants' request to voluntarily dismiss Mr. Nel from the case, making it necessary to seek the Court's relief. The

only allegations against Mr. Nel are that he removed trees from his own property, that he

directed profane language at plaintiff Eisenstecken and called the police, who intimidated her

father (a non-party), and that he cooperated with Verizon in its successful effort to obtain the

City's and TRPA's approval of the Ski Run Facility.  TAC, ¶¶ 21, 39, 88, 196.  None of these

allegations support any viable claim for relief.

### A. All claims based on defendant Nel's tree removal are moot and in any event fail to state a plausible claim for relief.

The TAC includes allegations about the alleged impacts of Mr. Nel's removal of 31 trees

from his property, but plaintiffs do not allege that TRPA's approval of the tree cutting violated

any specific provision of the Compact or regulations.  Instead, they cite it as evidence of

"piecemealing" (TAC, ¶¶ 89-92), and allege in conclusory fashion that TRPA's decision to

consider it separately from the Ski Run Facility application was "arbitrary and capricious,

lacking in evidentiary support, and was done in [sic] manner that failed to proceed as required by

law in violation of the Compact, Article VI(j)(5)."  *Id.*, ¶ 92.  As discussed in TRPA's motion to

dismiss, this claim is moot.  In addition, it fails to state a plausible claim for relief.[10]

Plaintiffs do not state a plausible claim for relief based on the tree cutting because they

admit that substantial evidence supported TRPA's decision to treat it separately from the

application for the Ski Run Facility.  Specifically, plaintiffs admit that the City's Fire Inspector

*ordered* Mr. Nel to remove the trees "because the inspector determined they presented a fire

hazard in this wildfire-susceptible zone," that TRPA's forester chose the specific trees to be cut,

and that TRPA issued a permit citing "defensible space and safety hazard" as the reason for

cutting the trees.  TAC ¶¶ 21, 88.  These admitted facts constitute more than substantial evidence

to support TRPA's conclusion that the tree-cutting was not related to the cell tower application,

and its decision to treat them separately.

---

[10] Plaintiffs do not challenge the tree cutting in a separate, numbered count, but incorporate these allegations among each of their numbered claims for relief.  Accordingly, defendants move to dismiss any claims based upon these allegations, and refer to them as a "claim" for the sake of brevity.

1  As set forth in more detail in TRPA's motion to dismiss, to overturn TRPA's decision,

2  plaintiffs would have to show a "prejudicial abuse of discretion," which means "the agency has

3  not proceeded in a manner required by law or if the act or decision of the agency was not

4  supported by substantial evidence in light of the whole record."  Compact Art. VI(j)(5).

5  Plaintiffs do not allege either, aside from their formulaic allegation that TRPA's decision was

6  "lacking evidentiary support" and "failed to proceed as required by law."  TAC, ¶ 92.  This is a

7  textbook example of "[t]hreadbare recitals of the elements of a cause of action, supported by

8  mere conclusory statements" condemned in *Ashcroft*, 556 U.S. at 678.

9  Given their admissions that the tree cutting was ordered by the City and approved by

10  TRPA for reasons that had nothing to do with the cell tower application – and has been

11  completed – plaintiffs cannot amend to state a plausible cause of action on this basis.  Any

12  claims based on Mr. Nel's tree removal must therefore be dismissed with prejudice.

**B.      No other allegations against Mr. Nel state a plausible claim for relief.**

15  Mr. Nel denies using profanity toward or calling the police on plaintiff Eisenstecken or

16  her family, but even if these allegations were true, they do not support a plausible claim for

17  relief.  In fact, plaintiffs do not base any claim for relief on Mr. Nel's language or calling the

18  police (nor could they, given the First Amendment), but rather make these allegations in

19  connection with their unrelated conflict of interest claim against TRPA and its staff and officials.

20  TAC, ¶ 196).  In addition, claim 10, the only other claim in which Mr. Nel is named, alleges – in

21  the unnumbered heading – that he is liable based solely on his refusal to "extend a reasonable

22  accommodation to prevent the installation of" the Ski Run Facility.  TAC, pp. 101-2.  As

23  discussed above, Mr. Nel is a private individual and not a "public entity" subject to the ADA, so

24  he has no duty to extend a "reasonable accommodation" to any plaintiff.  42 U.S.C. § 12131(1).

25  Furthermore, plaintiffs do not explain how a "reasonable accommodation" could possibly relate

26  to a state-law nuisance count, which in any event is not viable for the reasons set forth above.  In

27
28

1  short, plaintiffs assert no conceivable basis for liability against Mr. Nel, and all claims against

2  him must be dismissed with prejudice.

3      **V.      The entire complaint should be dismissed for violation of Rule 8.**

4          The TAC is needlessly long, filled with conclusory allegations, and confusing as to the

5  nature of the claims raised.  In other words, it violates Rule 8, which requires "a short and plain

6  statement of the claim showing that the pleader is entitled to relief," and that "each allegation must

7  be simple, concise, and direct."  Rule 8(a)(2) and (d)(1).  Plaintiffs have steadily expanded the

8  length of their complaint, from 35 pages (ECF no. 1), to 41 pages in their FAC, 80 pages in their

9  SAC, and now 114 pages in the TAC.

10          But the problem goes far beyond overall length.  The TAC is bloated with needless, often

11  irrelevant detail.  For example, plaintiffs allege repeatedly that the threat of a cell tower being

12  approved caused the sale of the Eisenstecken family residence at a "distressed" price, but admit

13  that the residence was owned by plaintiff Eisenstecken's father – a non-party – so what he realized

14  on the sale is irrelevant.  TAC, ¶¶ 21-22, 25-26, 196, 214.  They also devote roughly seven pages

15  to describing in great detail the correspondence resulting from their request for a so-called

16  "reasonable accommodation" (shutting down a functioning cell site), when it would have sufficed

17  to simply state that they made the request, to whom, and how it was resolved.  TAC, ¶¶ 98-110.

18  There are many other examples, including allegations of a conflict of interest against a hearing

19  officer who did not even make the decision in question (*id.*, ¶¶ 113-16), needless detail about the

20  history and legal status of the City (*id.*, ¶¶ 32-33), and a long discussion of alleged "harassment"

21  by defendant Nel and other unrelated allegations in the conflict of interest claim, to which they

22  have no possible relevance (*id.*, ¶ 196).

23          Aside from the burden of having to respond to so many irrelevant allegations, many of the

24  numbered paragraphs run on for a page or more.  *See, e.g.*, TAC ¶¶ 11, 13, 15, 16, 20, 21.  Having

25  to admit or deny dozens of allegations in a single paragraph is an unreasonable burden on

26  defendants.

27          Moreover, plaintiffs take 69 pages to get to their first claim for relief, and then compound

28

the problem by incorporating every previous allegation into each claim for relief.  This is a practice known as "shotgun pleading," which this Court has repeatedly condemned because "such a practice does not provide adequate notice for purposes of Rule 8."  *Caruso v. Hill*, 2020 WL 4018141, at *11 (E.D. Cal. July 15, 2020).  *See also Hamilton v. County of Madera*, 2021 WL 1577819, *6 (E.D. Cal. 2021) (recommending dismissal of complaints as "improper 'shotgun' pleadings that do not contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.' This basis alone constitutes a violation of Rule 8."), *R&R adopted*, 2021 WL 2651754 (E.D. Cal. 2021).

Given the foregoing, it is often impossible to discern the nature of the claims or against which defendant they are asserted.  For example, plaintiffs repeatedly complain that TRPA is issuing "blanket" permits for wireless facilities, and has allowed "the entire Tahoe Region to be saturated with cell towers, small cell wireless facilities, and earth and base stations" (TAC, ¶ 131), but challenge only two specific facilities in the TAC.  Claim 4 alleges that all actions taken or approved by TRPA must be consistent with TRPA's Regional Plan, and the "erratic policies and actions adopted by the TRPA are in direct contravention of and in conflict with this basic axiom of California, Nevada, and federal land use planning laws, and a large number of judicial precedents," but fails to identify either the "erratic policies" or the laws or judicial precedents they allegedly violate.

In other claims, it is impossible to discern which defendants are targeted, and for what relief.  Claim 9, alleging violations of the ADA and FHAA, does not name either Verizon or Mr. Nel in the lengthy heading (TAC, p. 96), but does include allegations against Verizon in the body of the count (*id.*, ¶¶ 204-6, 210, 212-214).  Claim 10, for public nuisance, names defendant Nel in the heading (TAC, p. 101), but he is not mentioned in the body of the count, aside from some of the previous 219 paragraphs incorporated by reference.

Critically, it is also unclear which defendants are targeted in plaintiffs' request for compensatory and punitive damages.  At paragraph 8 of the TAC, plaintiffs state they seek damages against Verizon, TRPA, and the City, while the tort claims in counts 10-13 seek damages

1  without specifying from which defendant(s) (TAC, ¶¶ 233, 246, 255, 263), and the prayer for

2  relief requests damages only from Verizon (*id.*, p. 113, ¶¶ 17-18).

3         All of these problems put unreasonable burdens on the Court and the defendants.  The

4  Ninth Circuit has upheld dismissals for violation of Rule 8 under less egregious circumstances.

5  *See, e.g., Hatch v. Reliance Ins. Co.*, 758 F.2d 409, 415 (9th Cir. 1985) (upholding a Rule 8(a)

6  dismissal of a complaint that "exceeded 70 pages in length, [and was] confusing and conclusory").

7  As the court explained in *McHenry v. Renne*, 84 F.3d 1172, 1179–80 (9th Cir. 1996):

8              Prolix, confusing complaints . . . impose unfair burdens on litigants and
            judges.  As a practical matter, the judge and opposing counsel, in order to
9              perform their responsibilities, cannot use a complaint such as the one
            plaintiffs filed, and must prepare outlines to determine who is being sued
10            for what.  Defendants are then put at risk that their outline differs from the
            judge's, that plaintiffs will surprise them with something new at trial which
11            they reasonably did not understand to be in the case at all. . . . The judge
            wastes half a day in chambers preparing the "short and plain statement"
12            which Rule 8 obligated plaintiffs to submit.  He then must manage the
            litigation without knowing what claims are made against whom.  This leads
13            to discovery disputes and lengthy trials, prejudicing litigants in other case[s]
            who follow the rules, as well as defendants in the case in which the prolix
14            pleading is filed.

15

16         In *McHenry*, the Ninth Circuit upheld dismissal of a complaint that was "only" 53 pages

17  long, observing that it "mixes allegations of relevant facts, irrelevant facts, political argument, and

18  legal argument in a confusing way."  84 F.3d at 1174.  That is a fair description of the TAC here.

19  The Court should dismiss it pursuant to Rules 8 and 41(b).  Based on the arguments above, the

20  dismissal should be with prejudice.

21         If the Court does allow a fourth amended complaint, defendants request that it be limited to

22  40 pages, as plaintiffs have demonstrated that they will continue to ignore Rule 8 without firm

23  guidance from the Court.  *See Olfati v. City of Sacramento*, 2021 WL 5204300, * 2 (E.D. Cal.

24  2021) (dismissing complaint for violation of Rule 8, and imposing 40-page limit on further

25  amendment).

26

27

28

**CONCLUSION**

The TAC is fatally flawed in that no set of facts exist to state a plausible claim for relief. Accordingly, any attempt to further amend would be futile, and the complaint would still be subject to dismissal.  For other grounds for dismissal, Verizon and Mr. Nel refer the Court to the concurrent motions to dismiss filed by TRPA and the City, in which, based on the facts of this case, Verizon and Mr. Nel join.  For all the foregoing reasons, Verizon and Mr. Nel respectfully request that this Court dismiss the entire TAC with prejudice.

Dated: July 25, 2022                       MACKENZIE & ALBRITTON LLP


                                           /s/ James A. Heard
                                           JAMES A. HEARD
                                           Attorneys for Defendants
                                           SACRAMENTO VALLEY LIMITED
                                           PARTNERSHIP, d/b/a VERIZON WIRELESS and
                                           GUILLIAM NEL